NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TODD CALLAN,<br><br>    Plaintiff,<br><br> v.<br><br>OCEAN COUNTY DEPARTMENT OF CORRECTIONS, *et al.*,<br><br>    Defendants. | Civ. No. 21-08450<br><br>**OPINION** |

THOMPSON, U.S.D.J.

## **INTRODUCTION**

This matter comes before the Court upon the Motion to Dismiss or alternatively, Motion for a More Definite Statement, filed by Defendants Ocean County Department of Corrections ("OCDOC") and Warden Sandra J. Mueller ("Mueller") (collectively, "Defendants").[1] (ECF Nos. 8, 9.) Plaintiff Todd Callan ("Plaintiff") filed an opposition (ECF No. 12), and Defendants filed a reply (ECF No. 15). The Court has decided the Motion based on the written submissions of the parties and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, the Motion to Dismiss is GRANTED IN PART and DENIED IN PART, and the alternative Motion for a More Definite Statement is DENIED.

---

[1] Defendants characterize their motion as a Motion for Summary Judgment. However, Defendants filed this Motion in lieu of an Answer, the parties have not conducted discovery, and their arguments rely primarily on facts alleged in the pleadings. Thus, the Court construes this motion as a Motion to Dismiss and does not rely on matters outside of the pleadings.

1

**BACKGROUND**

**I.      Factual Background**

This is a civil rights action for a correctional facility's failure to provide adequate medical care to a detainee. Defendant OCDOC is a correctional facility "owned and operated by the Ocean County government," which is a "political subdivision of the state of New Jersey." (Compl. ¶ 11, ECF No. 1.) Mueller is the warden of OCDOC. (*Id.* ¶ 12.) Plaintiff is a resident of Bayville, New Jersey. (*Id.* ¶ 10.) Since 2005, Plaintiff has mental health disorders and was "deemed permanently disabled by the Social Security Administration." (*Id.* ¶ 17 n.2.) Plaintiff was prescribed an antidepressant called Paxil for his "anxiety and suicidal ideation," and was "on a regimen of 30mg daily." (*Id.*)

On October 11, 2019, the Lacey Township Police Department arrested Plaintiff "for an allegation of simple assault and harassment" and confined him at OCDOC. (*Id.* ¶ 18.) The arresting officers knew that Plaintiff needed certain medication for his mental health disorder, and Plaintiff "requested and was permitted to take his required dosage of Paxil before leaving his residence." (*Id.* ¶ 19.) Additionally, prior to this arrest, Plaintiff had been an inmate at OCDOC from 2011 through 2012, during which OCDOC medical staff provided Plaintiff his "daily regimen of Paxil, without incident." (*Id.* ¶ 20.)

On October 13, 2019, two days into his detainment at OCDOC, Plaintiff had not received his Paxil. (*Id.* ¶ 22.) His mother called an OCDOC mental health nurse (the "OCDOC nurse") to inform her that "Plaintiff had not received his mental health medication since October 11, 2019." (*Id.*) The OCDOC nurse told Plaintiff's mother that she could not give Plaintiff the medication because only a psychiatrist could prescribe it. (*Id.* ¶ 23.) Plaintiff's mother called the OCDOC nurse again on October 15 and October 16, 2019, but did not receive calls back. (*Id.* ¶ 25.)

On October 21, 2019, Plaintiff's personal physician faxed OCDOC medical staff to inform them that Plaintiff needed to take his Paxil. (*Id.* ¶ 24.) The fax indicates receipt with a date stamp from that day. (*Id.*) Thereafter, Plaintiff's mother "called and spoke with [Mueller]," who informed her that "there was nothing she could do to assist Plaintiff concerning the medical staff's denial of medication," and that "the medical staff could deny Plaintiff his medication, notwithstanding his lawful prescription for the medication." (*Id.* ¶ 26.)

Plaintiff wrote to OCDOC "medical officials no less than nine times" requesting to receive his medication. (*Id.* ¶ 27.) He was "ordered to stop writing" to them and was "placed in segregation confinement" when he refused. (*Id.*)

Around October 25, 2019, Plaintiff wrote to his mother stating that he felt "suicidal" and "very depressed," "was having panic attacks" and "trouble breathing," and "felt he had a heart attack." (*Id.* ¶ 29.) He alleges that he felt too afraid to tell the OCDOC officials about this. (*Id.*)

On November 1, 2019, a state court judge issued an order "directing [OCDOC] to administer the necessary medical treatment and provide Plaintiff with his prescription [of] Paxil 30mg." (*Id.* ¶ 30.) OCDOC staff continued to not provide the medication. (*Id.*)

Plaintiff "continued to write to the jail administrators and medical staff complaining that he was not provided with his medication, despite the warnings by jail officials" that they would put him "in segregation if he continued to do so." (*Id.* ¶ 31.)

On December 4, 2019, Plaintiff's mother faxed his "Medical and Psychiatric Discharge Summary from the New Jersey Department of Corrections, dated May 11, 2018" to a "health services administrator" with Ocean County Jail, and a representative from "Ocean Mental Service." (*Id.* ¶ 32.) On December 6 and 16, 2019, representatives from Ocean Mental Service and OCDOC "conducted a mental health assessment" on Plaintiff. (*Id.* ¶¶ 33, 34.) Plaintiff

3

informed the representatives that "he had been prescribed Paxil[,] . . . but the jail physician was withholding the medication." (*Id.* ¶ 34.) When asked why the jail physician was withholding the medication, the OCDOC representative said "she was not permitted to discuss the issue." (*Id.* ¶ 35.) The Ocean Mental Service representative determined that it was "unusual" to deny someone with Plaintiff's symptoms the administration of Paxil. (*Id.* ¶ 36.)

Thereafter, "Plaintiff continued to write notes to correction officials" to get his medication, and on December 18, 2019, "was placed in medical isolation (segregation) for alleg[edly] harassing the staff." (*Id.* ¶ 37, 38.) While in "isolation," Plaintiff showed an OCDOC doctor (the "OCDOC doctor") the state court order directing OCDOC to administer his prescribed medication. (*Id.* ¶ 39.) According to Plaintiff, the OCDOC doctor "took the Order from Plaintiff, read it, tossed it on the bed, and told Plaintiff he did not care what the Order stated; he would not administer the medication." (*Id.*) Plaintiff returned from "segregation" into "the general population" on December 23, 2019. (*Id.*)

On January 20, 2020, OCDOC officials informed Plaintiff that "he would begin receiving Paxil but at 20mg instead of the prescribed amount of 30mg" and would have to attend group therapy at OCDOC. (*Id.* ¶ 42.)

On January 28, 2020, after 109 days of custody, Plaintiff was released. (*Id.* ¶ 43.) He alleges that, "[a]s a consequence of not receiving his medication for over three months, [he] suffered from feelings of depression, anxiety, panic attacks, racing thoughts, and trouble sleeping." (*Id.* ¶ 44.) Additionally, a cardiologist "diagnosed Plaintiff with Mitral Regurgitation, Syncope, and Tachycardia," which Plaintiff did not have prior to his time at OCDOC. (*Id.*)

## II. Procedural Background

On April 6, 2021, Plaintiff filed this Complaint, asserting claims under the Constitution, 42 U.S.C. § 1983; the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-1 *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–12165; the Rehabilitation Act ("RA"), 29 U.S.C. § 791 *et seq.*; and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 *et seq.* The Complaint alleges all counts against Defendants Mueller and OCDOC, as well as the OCDOC nurse, the OCDOC doctor, the OCDOC "health services administrator," and other unnamed officials at OCDOC. (*Id.* ¶¶ 2, 11–16.)

On May 14, 2020, Defendants Mueller and OCDOC filed a Motion for Summary Judgment in lieu of answering. (ECF No. 9.)[2] On June 7, 2021, Plaintiff filed an opposition, and on June 18, 2021, Defendants filed a reply. (ECF Nos. 12, 16.)

## LEGAL STANDARD

### I. Motion to Dismiss

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

When considering a Rule 12(b)(6) motion, a district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Iqbal*, 556 U.S. at 675). "Second, the court should identify allegations that, 'because they are no more than conclusions, are not

---

[2] As previously noted, the Court construes Defendants' Motion for Summary Judgment in lieu of answering as a Motion to Dismiss.

entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). The court must accept as true all well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). Third, the court must determine whether the well-pleaded facts "plausibly give rise to an entitlement for relief." *Malleus*, 641 F.3d at 563 (quoting *Iqbal*, 556 U.S. at 679); *see also Fowler*, 578 F.3d at 211. A complaint that does not demonstrate more than a "mere possibility of misconduct" must be dismissed. *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## II. More Definite Statement

A party may move for a more definite statement if a pleading is "so vague or ambiguous that the [moving] party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Courts within the Third Circuit grant a Rule 12(e) motion "when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice." *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 232–33 (D.N.J. 2003). "It is not the function of 12(e) to provide greater particularization of information alleged in the complaint or which presents a proper subject for discovery." *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 736–37 (D.N.J. 2008). "The basis for granting such a motion is unintelligibility, not lack of detail." *Id.* "The decision to grant a Rule 12(e) motion is 'a matter committed largely to the discretion of the district court.'" *Id.* (quoting *Clark*, 213 F.R.D. at 232).

## DISCUSSION

### I.     Constitutional Claims — Section 1983 (Counts I, IV)

Plaintiff alleges that Defendants' failure to administer his medication violated his Fifth Amendment due process rights, as incorporated against the states by the Fourteenth Amendment and enforced through § 1983.[3] (Compl. ¶¶ 47–49.) He seeks monetary damages. (*Id.* ¶ 49.)[4]

Section 1983 allows an individual to sue a "person" who, acting "under color of any statute [or] ordinance . . . of any State," violates that individual's Constitutional rights. 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of State law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

#### A.     *The Ocean County Department of Corrections*

The Eleventh Amendment bars § 1983 suits against states seeking monetary damages. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 103 (1984); *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 697 (3d Cir. 1996). OCDOC is an arm of the state of New Jersey and thus, entitled to Eleventh Amendment immunity. *Grabow v. S. State Corr. Facility*, 726 F. Supp. 537, 539 (D.N.J. 1989) (finding state correctional facility as a "branch" of the state and thus, not a "person" within the meaning of § 1983). Thus, the Court dismisses Plaintiff's § 1983 claim against OCDOC.

#### B.     *Warden Sandra Mueller*

Plaintiff alleges that Mueller violated his due process rights because she denied him "access to prescribed medication necessary for his mental health." (Compl. ¶ 47.) While

---

[3] In Count IV, Plaintiff appears to allege another § 1983 claim without an underlying constitutional violation. The Court dismisses this Count.

[4] Plaintiff concedes that he did not plead an unconstitutional policy under *Monell v. Department of Social Services*, 436 U.S. 658 (1961). The Court does not address this argument.

7

plaintiffs may not bring § 1983 claims seeking damages against states or state employees in their official capacities, they may do so against state employees in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 25–26 (1991). To allege a due process violation for inadequate medical care, "'a plaintiff must make (1) a subjective showing that the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those medical needs were serious.'" *Johnson v. Warden of Camden Cty. Corr. Facility*, 2021 WL 1625094, at *2 (D.N.J. Apr. 27, 2021) (quoting *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

"A serious medical need exists where 'failure to treat can be expected to lead to substantial and unnecessary suffering,' and a doctor has diagnosed the condition, or the need for treatment would be obvious to a lay person." *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991)). Prison officials are "deliberately indifferent to such needs when they are actually aware of a substantial risk of serious harm and disregard that risk." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Because the official must actually know of the risk, "a plaintiff may not rely solely on a *respondeat superior* theory of liability." *Id.* Additionally, the plaintiff must show more than "negligence in addressing a medical condition or a disagreement over the course of treatment received." *Miller v. Steele-Smith*, 713 F. App'x 74, 79 (3d Cir. 2017).

Because the Eleventh Amendment bars a suit seeking damages against Mueller in her official capacity, the Court assesses only whether Plaintiff plausibly pled Mueller's "deliberate indifference" to his "serious medical need" in her individual capacity. *See Hafer*, 502 U.S. at 25–26; *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010).

First, Plaintiff plausibly alleges a "serious medical need" by stating that he had "mental health disorders" and was "prescribed Paxil for anxiety and suicidal ideation." (Compl. ¶ 17.) He was "deemed permanently disabled by the Social Security Administration." (*Id.*) After not receiving his medication, Plaintiff experienced an array of symptoms, including "trouble breathing," suicidal thoughts, depression, "anxiety, panic attacks, racing thoughts, and trouble sleeping. (*Id.* ¶¶ 29, 44.) The Court finds these allegations sufficient to show a "serious medical need." *See Dooley*, 957 F.3d at 374 (finding that the alleged medical need of "depression, pain, trauma, lack of sleep, nightmares, paranoia, and related mental health issues could constitute the requisite serious medical need if diagnosed").

Second, Plaintiff plausibly alleges Mueller's "deliberate indifference." (Compl. ¶ 26); *Dooley*, 957 F.3d at 375. Supervisors show deliberate indifference if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *Santiago*, 629 F.3d at 129. Thus, a warden who "actually . . . knew of a substantial risk of serious harm," and "disregarded that risk" may be liable under a deliberate indifference claim. *See Dooley*, 957 F.3d at 375.

According to the Complaint, after contacting the OCDOC nurse about the administration of his Paxil, Plaintiff's mother "called and spoke with [] Mueller," who told Plaintiff's mother that "there was nothing she could do to assist Plaintiff concerning the medical staff's denial of medication . . . notwithstanding his lawful prescription." (Compl. ¶ 26.) Thereafter, Plaintiff did not receive his Paxil or any other treatment for his mental health disorder for the majority of his time in custody. (*Id.* ¶¶ 42–43.)

Based on these allegations, Mueller personally knew that Plaintiff needed treatment and failed to act. (*Id.* ¶ 26.) Thus, the Complaint plausibly alleges that she either personally

9

"participated in violating [P]laintiff's rights" or "had knowledge of and acquiesced in [her] subordinates' violations." *Santiago*, 629 F.3d at 129 n.5; *compare Dooley*, 957 F.3d at 375 (finding that, "if the prison officials were actually aware or knew of a substantial risk of serious harm when they allegedly failed to provide [a plaintiff with mental health] resources, and they disregarded that risk, then that could constitute deliberate indifference to a serious medical need"), *with Velasquez v. Hayman*, 546 F. App'x 94, 97 (3d Cir. 2013) (dismissing complaint against supervisor of nursing staff when the plaintiff admitted that he included her because of her role as supervisor and not because of personal involvement) and *Johnson*, 2021 WL 1625094, at *2 (dismissing complaint when the plaintiff failed to allege "*any* facts to establish personal involvement of the warden . . . in a constitutional violation") (emphasis added).

Accordingly, Plaintiff's allegations meet the standard for deliberate indifference and the § 1983 claim against Mueller in her individual capacity may move forward.

## II. New Jersey Civil Rights Act (Count VI)

The NJCRA "creates a private cause of action" to any person "deprived of any substantive due process or equal protection rights" secured by the United States or New Jersey laws or constitutions, and with which "a person acting under color of law" has interfered. N.J.S. 10:6-2(c); *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011). The NJCRA models § 1983, and New Jersey district courts "repeatedly interpret[] [the] NJCRA analogously to § 1983." *Id.* at 443–44 (collecting cases); *see also Tumpson v. Farina*, 218 N.J. 450, 474 (2014) ("The interpretation given to parallel provisions of Section 1983 may provide guidance in construing our Civil Rights Act."); *Middleton v. City of Ocean City*, 2014 WL 2931046, at *12 (D.N.J. June 30, 2014) (applying § 1983 municipal liability standard to NJCRA claim).

10

Plaintiff alleges that Defendants' failure to administer his medication violates his rights under Article I, Paragraph 12 of the New Jersey Constitution, in addition to his federal rights. (Compl. ¶¶ 67–70.) Because the Court analyzes the NJCRA under the same standard as § 1983, the Court grants Defendants' Motion as to OCDOC. *See supra*, Discussion I.A. However, Plaintiff's NJCRA claim against Mueller acting in her individual capacity may proceed.

### III.  Americans with Disabilities Act and Rehabilitation Act (Counts II, III)

Plaintiff alleges that Defendants violated the ADA and RA by operating OCDOC "with cruel intent and apathy for the wellbeing of Plaintiff." (Compl. ¶¶ 55, 61.) Because the same analysis applies to both ADA and RA claims, the Court addresses these claims together. *See New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 302 (3d Cir. 2007).

#### A.  *Ocean County Department of Corrections*

"To state a claim under either the ADA or the RA, [a plaintiff] must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity [of a public entity], or otherwise was subject to discrimination, by reason of his disability." *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 288–89 (3d Cir. 2019); *see also* 42 U.S.C. § 12132; 29 U.S.C. § 794(a). "[T]he ADA 'unmistakably includes state prisons' as covered public entities." *Webster v. New Jersey*, 2018 WL 1535207, at *4 (D.N.J. Mar. 29, 2018) (quoting *Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 209–10 (1998)). Thus, Plaintiff properly brings this suit against OCDOC.

Defendants argue that the Complaint fails to allege (1) Plaintiff's disability; (2) that any discrimination occurred on the basis of his alleged disability; and (3) that Defendants acted with "deliberate indifference." (Def.'s Br. at 21–23.)

### 1.     Plaintiff's Disability

A disability is "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1)(A). "[M]ental illness qualifies as a disability under the statute." *Disability Rts. New Jersey, Inc. v. Comm'r, New Jersey Dep't of Hum. Servs.*, 796 F.3d 293, 301 (3d Cir. 2015). Defendants argue that Plaintiff only "generally alleges that he is a qualified person . . . with disabilities that substantially impair one or more major life activities." (Def.'s Br. at 21.) However, the Complaint alleges Plaintiff's specific symptoms, including depression, suicidal thoughts, panic attacks, racing heart, and trouble breathing (*see* Compl. ¶¶ 17, 29, 44); a prescription to Paxil, an anti-depressant (*id.* ¶ 17); and that he received disability benefits under the SSA (*id.*). Taken as true, these facts plausibly state that Plaintiff has "mental health disorders," which are disabilities under the meaning of the ADA and RA. (*Id.*); *see also Disability Rts.*, 796 F.3d at 301.

### 2.     Discrimination on the Basis of Disability

The plaintiff must show that he was "precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess*, 933 F.3d at 288–89. "[A] prison's refusal to accommodate inmates' disabilities 'in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs' constitutes a denial of the benefits of a prison's services, programs, or activities under Title II." *Id.* at 290 (quoting *United States v. Georgia*, 546 U.S. 151, 157 (2006)). Here, Plaintiff has alleged numerous occasions that OCDOC failed to administer his Paxil. (Compl. ¶¶ 22, 23, 26, 30, 37, 38, 39, 42.) These alleged failures plausibly state OCDOC's denial of a program, service, or activity under the ADA and RA. *See Furgess*, 933 F.3d at 291 (finding that accessible showers are "services, programs, or activities" under the ADA and RA).

A plaintiff must also show that a prison's denial of services occurred due to his disability. *Id.* at 289. "Causation standards are different under the ADA and RA—under the RA, the disability must be the sole cause of the discriminatory action, while the ADA only requires but-for causation." *Id.* at 291 n.25. "[D]etention and correctional facilities are unique facilities . . . [because] [i]nmates cannot leave the facilities and must have their needs met by the corrections system, including needs relating to the disability." 28 C.F.R. § Pt. 35, App. A. Accordingly, corrections systems must "fulfill their nondiscrimination and program access obligations by adequately addressing the needs of prisoners with disabilities," including "proper medication and medical treatment." *Id.* Thus, in *Furgess*, the Third Circuit determined that a plaintiff stated a claim for causation under the RA and ADA when the correctional facility knew about the plaintiff's disability, yet "fail[ed] to equip" him with accessible showers. *See* 933 F.3d at 292 (finding that the "failure to equip" with accessible showers breached the facility's "duty to reasonably accommodate prisoners with disabilities"); *see also Webster*, 2018 WL 1535207, at *5–6 (finding genuine dispute whether the state denied the plaintiff reasonable accommodations "on the basis of his disability" when the record reflected that the "State Defendants . . . had notice of Plaintiff's disability and need for assistance" yet failed to provide accommodations).

Plaintiff has plausibly alleged the denial of services "by reason of" his disability. He alleges that OCDOC knew of and failed to administer Plaintiff's medication on numerous occasions. *See* Discussion *infra* III.A.3. As a detention and correction facility, OCDOC is uniquely situated to ensure its prisoners with disabilities "have their needs met." *See* 28 C.F.R. § Pt. 35, App. A. Yet, like in *Furgess*, where the prison "fail[ed] to equip" the plaintiff with accessible showers, here, OCDOC "fail[ed] to equip" Plaintiff with adequate treatment for his

mental health disorder. *See* 933 F.3d at 291; *Webster*, 2018 WL 1535207, at *5–6. Thus, Plaintiff has plausibly pled that the denial of services occurred due to his disability.

        3.        Deliberate Indifference

When seeking compensatory damages, as here, the plaintiff must "show intentional discrimination under a deliberate indifference standard." *Furgess*, 933 F.3d at 289. A showing of deliberate indifference requires "both (1) 'knowledge that a harm to a federally protected right is substantially likely,' and (2) 'a failure to act upon that likelihood.'" *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013) (quoting *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir.2001)). Plaintiff plausibly alleges both prongs.

First, there are multiple instances that indicate OCDOC's knowledge of Plaintiff's need for medical care: Plaintiff's prior period at OCDOC when the prison administered his medication "without incident," (Compl. ¶ 20); his mother's call to Mueller, (*id.* ¶ 26); his mother's multiple calls to the OCDOC nurse, (*id.* ¶¶ 22, 25); his and his mother's letters to OCDOC administrative and medical personnel, (*id.* ¶¶ 27, 31, 37); his prescription faxed to OCDOC by his personal physician, (*id.* ¶ 24); his "mental health assessment" on December 6, 2019, (*id.* ¶¶ 33–36); and the Superior Court order "directing [OCDOC] to administer the necessary medical treatment" and Plaintiff's informing the OCDOC doctor thereof (*id.* ¶¶ 30, 39).

Second, Plaintiff has alleged that OCDOC failed to act on its knowledge of Plaintiff's need for medical treatment. While "mere disagreement [] between prison doctors and a prisoner about the proper course of treatment" does not rise to the level of "deliberate indifference," a lack of consideration of a prisoner's medical needs does. *See Velasquez v. Hayman*, 546 F. App'x 94, 97 (3d Cir. 2013) (declining to find deliberate indifference when plaintiff alleged that prison doctor "improperly diagnosed and treated [him]" when the record showed that the

doctor's decisions were a result of "medical judgment"); *Dooley*, 957 F.3d at 375 (allowing plaintiff to amend his complaint to state "whether the [prison] officials ever considered whether [he] was receiving appropriate mental health care or provided further evaluation to determine what level of treatment [plaintiff] required" because this was relevant to deliberate indifference).

The Complaint alleges multiple instances to show that, not only did OCDOC fail to administer Plaintiff's Paxil, but it failed to exercise any "medical judgment" whatsoever or consider whether Plaintiff was receiving appropriate mental health care. *Velasquez*, 546 F. App'x at 97; *Dooley*, 957 F.3d at 375–76. After Plaintiff's mother notified Mueller and the OCDOC nurse of Plaintiff's need for his medication, neither took action. (*See id.* ¶ 23–26.) The OCDOC nurse informed Plaintiff's mother that a psychiatrist needed to prescribe the medication, but when doctor faxed a prescription to OCDOC, she did not take action. (*See id.*) After the Superior Court judge issued the order directing OCDOC to administer the necessary medical treatment to Plaintiff, OCDOC allegedly "continued to refuse to provide the medication." (*Id.* ¶ 30.) When Plaintiff notified OCDOC medical staff and administrators that he needed his medication, he continued to not receive it. (*Id.* ¶¶ 31–32.) And, when Plaintiff showed the OCDOC doctor the Superior Court order, the doctor allegedly "read it, tossed it on the bed, and told Plaintiff he did not care what the Order stated; he would not administer the medication." (*Id.* ¶ 39.)

Nor did Plaintiff receive other types of treatment: It was not until December 6, 2019 (with his custody beginning on October 11) that Plaintiff underwent a "mental health assessment." (*Id.* ¶¶ 34–36.) The fact that the OCDOC doctor "tossed" the Superior Court order aside demonstrates that the doctor did not consider Plaintiff's request, regardless of his ultimate decision to deny the medication. (*See id.* ¶ 39.) In total, Plaintiff remained in custody from October 11, 2019 through January 20, 2020 before receiving his medication or any other type of

treatment. (*See id.* ¶¶ 18, 42.) It was not until January 20, 2020 when, for the last eight days of his custody, Plaintiff received a lower dose of Paxil and "group therapy." (*Id.* ¶ 42.)

In sum, this is not a case of "mere disagreement [] between prison doctors and a prisoner about the proper course of treatment." *Velasquez*, 546 F. App'x at 97. Not only does Plaintiff allege the failure to administer his medication, but an overall failure to consider his repeated requests for medication or evaluate other treatment options. Thus, the Complaint plausibly alleges OCDOC's "deliberate indifference" to Plaintiff's medical needs. For the foregoing reasons, Plaintiff has stated claims for damages under the ADA and RA against OCDOC.

B.   *Warden Sandra Mueller*

The ADA and the RA do not create private causes of action against individuals. *Kokinda v. Pennsylvania Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019); *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007). The ADA and RA allow suits against individuals in their official capacities, but "where the plaintiff simultaneously sues the state entity that employs the individual defendants," the court may dismiss the individuals "duplicative of the claims against the state." *Dews v. Link*, 2021 WL 2223795, at *3 (E.D. Pa. June 2, 2021) (citing *Snell v. City of York, Pennsylvania*, 564 F.3d 659, 664 (3d Cir. 2009) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (noting that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). Thus, the Court dismisses ADA and RA claims against Mueller acting in both individual and official capacities. *See Kokinda*, 779 F. App'x at 942; *Jersey City Pub. Sch.*, 486 F.3d at 804; *Snell*, 564 F.3d at 664.

### IV. New Jersey Law Against Discrimination (Count VII)

NJLAD provides that "[a]ll persons shall have the opportunity . . . to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation" without discrimination on the basis of disability. N.J.S. § 10:5-4. "New Jersey courts generally interpret the [NJ]LAD by reliance upon [the construction of] analogous federal antidiscrimination statutes." *Webster*, 2018 WL 1535207 at *4; *D.G. v. Somerset Hills Sch. Dist.*, 559 F. Supp. 2d 484, 502 (D.N.J. 2008). Thus, for the reasons stated *supra* Discussion III, Plaintiff's NJLAD claim may move forward as to OCDOC, but not Mueller.

### V. More Definite Statement

The Court denies Defendants' Motion for a More Definite Statement. Of the remaining claims — the § 1983 and NJCRA claims against Mueller in her individual capacity and the ADA, RA, and NJLAD claims against OCDOC — none are so "vague" or "unintelligibl[e]" to warrant a more definite statement. Fed. R. Civ. P. 12(e); *Clark*, 213 F.R.D. at 232–233; *MK Strategies, LLC*, 567 F. Supp. 2d at 736–37. Defendants can sufficiently understand, respond, and seek discovery based on the facts alleged.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF Nos. 8, 9) is GRANTED IN PART and DENIED IN PART, and Defendants' alternative Motion for a More Definite Statement is DENIED. An appropriate Order will follow.


Date: <u>March 28, 2022</u>                                           */s/ Anne E. Thompson*
                                                                         ANNE E. THOMPSON, U.S.D.J.